**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| DORRENE STANLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV380 |
| | ) | |
| WENTWORTH VOLUNTARY FIRE DEPARTMENT, INC., LARRY TERRELL, in his official capacity as Chairman of the Board and in his individual capacity, LARRY RIERSON, in his official capacity as Board Member and in his individual capacity, and BILLY HILL, in his official capacity as First Captain and in his individual capacity, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendants' Motion for Summary Judgment (Docket Entry 27) and Plaintiff's Motion for Partial Summary Judgment (Docket Entry 29), pursuant to this Court's Amended Standing Order 30 (see Docket Entry 14) and 28 U.S.C. § 636(b)(1)(B), as well as for disposition of Defendants' Motion to Strike (Docket Entry 43), pursuant to 28 U.S.C. § 636(b)(1)(A). (See Docket Entries dated June 8 and July 20, 2011.) For the reasons that follow, Defendants' Motion to Strike will be denied and a recommendation will be made that the Court grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Partial Summary Judgment.

This case arises from Plaintiff's First Amended Complaint ("FAC"), which identifies Plaintiff as a "woman" who, "[f]or many years, . . . was a member in good standing of [Defendant] Wentworth Voluntary Fire Department, Inc. [("WVFD")]," an entity that provides fire protection services to Wentworth, North Carolina. (Docket Entry 8, ¶¶ 4, 10, 31.) According to the FAC, during the time period relevant to this case, Defendants Larry Terrell, Larry Rierson, and Billy Hill served as "the chairman of the board of directors," a "member of the board of directors," and as a "captain" of Defendant WVFD, respectively. (Id., ¶¶ 22, 25, 28.)

Under the heading, "SUMMARY OF THE PLAINTIFF'S CLAIMS," the FAC states:

> The Defendants discriminated against the Plaintiff because she is a woman and retaliated against her because she reported to the fire chief sex discrimination in the fire department, safety violations in the fire department, and training irregularities in the fire department, and because she testified in court against a fire department board member.

(Id., ¶ 1.) After allegations under headings, "JURISDICTION AND VENUE" (id., ¶¶ 2-30) and "FACTUAL ALLEGATIONS" (id., ¶¶ 31-77), the FAC identifies five "CLAIM[S] FOR RELIEF" (see id., ¶¶ 78-112).

The "FIRST CLAIM FOR RELIEF" (brought against Defendant WVFD "[p]ursuant to 42 U.S.C. § 1983") identifies the following three alleged federal constitutional violations:

> [Defendant WVFD] acted under the color of state law to deprive the Plaintiff of her <u>First Amendment right to free speech by retaliating against her for speaking about sex discrimination in the fire department, training irregularities in the fire department, safety concerns in</u>

the fire department, and other matters of public concern involving the fire department.

[Defendant WVFD] acted under the color of state law to deprive the Plaintiff of her First Amendment right to free speech by retaliating against her for testifying in open court against Defendant Rierson, a board member of [Defendant WVFD].

[Defendant WVFD] acted under the color of state law to deprive the Plaintiff of her Fourteenth Amendment right to the equal protection of the law by removing her from the fire department because she is a woman.

(Id., ¶¶ 80-82 (paragraph numbers omitted) (emphasis added).)

In the "SECOND CLAIM FOR RELIEF," the FAC alleges ("[p]ursuant to 42 U.S.C. § 1983") the same First Amendment violations by Defendants Terrell, Rierson, and Hill ("in their individual capacities") as stated against Defendant WVFD. (Id., ¶¶ 89-91.) Said claim for relief also includes an equal protection claim slightly broader than alleged against Defendant WVFD: "Defendants Terrell, Rierson, and Hill acted under the color of state law to deprive the Plaintiff of her Fourteenth Amendment right to the equal protection of the law by preventing her from teaching firefighting courses and by causing her removal from [Defendant WVFD] because she is a woman." (Id., ¶ 92 (emphasis added).)

The FAC's "THIRD CLAIM FOR RELIEF" sets out three conspiracy causes of action against Defendants Terrell, Rierson, and Hill:

Pursuant to 42 U.S.C. § 1985(2), the Plaintiff seeks damages and attorney fees from Defendants Terrell, Rierson, and Hill in their individual capacities for conspiring to: a) deter by intimidation or threat one or more witnesses in the Plaintiff's then pending court action for a restraining order against Defendant Rierson; b) retaliate against the Plaintiff for testifying in her then pending court action for a restraining order against Defendant Rierson; and c) impede, hinder, obstruct, or

-3-

> <u>defeat the due course of justice in the Rockingham County District Court</u>.
>
> <u>Pursuant to 42 U.S.C. § 1985(3)</u>, the Plaintiff seeks damages and attorney fees from Defendants Terrell, Rierson, and Hill in their individual capacities for <u>conspiring to deprive the Plaintiff of the equal protection of the law and of the equal privileges and immunities of the law because the Plaintiff is a woman</u>.
>
> <u>Pursuant to N.C. Gen. Stat. § 99D-1</u>, the Plaintiff seeks damages and attorney fees from Defendants Terrell, Rierson, and Hill in their individual capacities for <u>conspiring to interfere with the Plaintiff's exercise or enjoyment of rights secured by the United States Constitution and the North Carolina Constitution because the Plaintiff is a woman</u>.

(<u>Id.</u>, ¶¶ 98-100 (paragraph numbers omitted) (emphasis added).)

The FAC's "FOURTH CLAIM FOR RELIEF" asserts a claim for tortious interference with Plaintiff's contractual rights. (<u>See</u> <u>id.</u>, ¶¶ 105-07.) Finally, the "FIFTH CLAIM FOR RELIEF," which bears the subheading, "Damages and Equitable Relief," does not identify any substantive cause of action. (<u>See</u> <u>id.</u>, ¶¶ 109-12.)

After Defendants jointly answered (Docket Entry 12), discovery ensued (<u>see</u> Docket Entry 16). At the conclusion of the discovery period, Plaintiff and Defendants filed a stipulation of dismissal with prejudice as to Plaintiff's fourth claim for relief (for tortious interference with contractual rights). (Docket Entry 23.) Defendants thereafter moved for summary judgment on all of Plaintiff's remaining causes of action. (<u>See</u> Docket Entries 27, 28.) Plaintiff, in turn, moved for partial summary judgment as to: "1. Whether [Defendant WVFD] acted under color of state law; and 2. Whether [Defendant WVFD] violated the Plaintiff's First Amendment rights when it dismissed her because she brought a civil action

against Defendant Rierson or because she testified in a civil action against Defendant Rierson." (Docket Entry 29.) Both sides responded and replied to the respective summary judgment motions. (<u>See</u> Docket Entries 35, 38, 41, 45.) In addition, Defendants filed their instant Motion to Strike portions of certain materials Plaintiff included with her summary judgment filings (Docket Entry 43) and Plaintiff responded in opposition (Docket Entry 46).

Defendants' brief in support of their summary judgment motion presented specific arguments as to why all of the causes of action in Plaintiff's FAC failed as a matter of law; however, as Defendants pointed out in their reply brief in support of their summary judgment motion (<u>see</u> Docket Entry 45 at 1, 4-5, 10), Plaintiff's response to said motion did not address Defendants' arguments as to the following causes of action:

1) Plaintiff's Section 1983 claim against Defendant WVFD for retaliating against her for speaking out about sex discrimination, training irregularities, safety concerns, and other matters of public concern occurring at Defendant WVFD, in violation of her First Amendment Free Speech Clause rights (i.e., part of Plaintiff's First Claim for Relief) (<u>compare</u> Docket Entry 28 at 33-36, <u>with</u> Docket Entry 41 at 14-22);

2) all theories of recovery in Plaintiff's Section 1983 claim against Defendants Terrell, Rierson, and Hill for alleged violations of her First Amendment Free Speech Clause and Fourteenth Amendment Equal Protection Clause rights (i.e., all of Plaintiff's

Second Claim for Relief) (<u>compare</u> Docket Entry 28 at 27-40, <u>with</u> Docket Entry 41 at 14-22); and

3) Plaintiff's conspiracy cause of action against Defendants Terrell, Rierson, and Hill under Section 1985(3) (i.e., part of Plaintiff's Third Claim for Relief) (<u>compare</u> Docket Entry 28 at 40-42, <u>with</u> Docket Entry 41 at 14-22).

On the other hand, Plaintiff's response to Defendants' summary judgment motion did set forth arguments challenging Defendants' contentions as to the lack of viability of the remaining causes of action from her FAC, namely:

1) Plaintiff's Section 1983 claim against Defendant WVFD for allegedly retaliating against her for testifying against Defendant Rierson in violation of Plaintiff's First Amendment Free Speech Clause rights (as to which Plaintiff also moved for summary judgment and Defendants responded in opposition) (<u>compare</u> Docket Entry 28 at 31-33, 36-37, <u>with</u> Docket Entry 41 at 17-18);

2) Plaintiff's Section 1983 claim against Defendant WVFD for allegedly removing her as a member in violation of her Fourteenth Amendment Equal Protection Clause rights (<u>compare</u> Docket Entry 28 at 18-27, <u>with</u> Docket Entry 41 at 18-19);

3) Plaintiff's Section 1985(2) claim against Defendants Terrell, Rierson, and Hill for conspiracy (<u>compare</u> Docket Entry 28 at 40-42, 44-45, <u>with</u> Docket Entry 41 at 21-22); and

4) Plaintiff's Section 99D-1 claim against Defendants Terrell, Rierson, and Hill for conspiracy (<u>compare</u> Docket Entry 28 at 40-43, <u>with</u> Docket Entry 41 at 19-21).

During all relevant times, Defendant WVFD contracted with Rockingham County, North Carolina, to provide fire protection services to the Town of Wentworth, and the membership of Defendant WVFD determined by vote who could belong. (Docket Entry 28-28 at 10; Docket Entry 30-11 at 2-5; Docket Entry 30-12 at 2-4, 18-19.) The members of Defendant WVFD (which then included Defendants Terrell and Rierson) voted Plaintiff into membership in 1995, Plaintiff resigned that membership sometime around 2001, and the members of Defendant WVFD (which then included Defendants Terrell, Rierson, and Hill) voted Plaintiff back into the membership in 2008. (Docket Entry 28-2 at 2; Docket Entry 28-9 at 1; Docket Entry 28-28 at 10-12.)[2] "In 2009 and 2010, [Defendant] Terrell was the chairman of the board [of directors of Defendant WVFD]." (Docket Entry 41-40 at 2.) During that same time period, Defendant Rierson also served on Defendant WVFD's board of directors. (Id.)

On June 23, 2009, Plaintiff (through her then-attorney) gave notice to Defendant WVFD's chief that Plaintiff alleged Defendant WVFD had violated her "civil rights . . . [by] engag[ing] in a

---

[1] As set out below in the Discussion section, see infra, p. 18, at this stage of the proceedings, the Court must derive the facts by viewing the record evidence in the light most favorable to the non-movant.

[2] Upon rejoining Defendant WVFD, Plaintiff declined membership-generated nominations for positions as a captain and a lieutenant with Defendant WVFD (due to other time commitments she had, including her employment with the Guilford County Sheriff's Office and as a dispatcher for Rockingham County), but accepted the membership-generated nomination as a sergeant (which the membership approved by popular vote). (Docket Entry 28-27 at 9; Docket Entry 28-28 at 13; Docket Entry 41-20 at 2.) At the end of 2009, Plaintiff declined to continue in any officer position with Defendant WVFD. (Docket Entry 28-28 at 14.)

pattern of discrimination regarding [her] sexual orientation and gender." (Docket Entry 41-26 at 1; <u>see also</u> Docket Entry 28-2 at 4, 10-11; Docket Entry 41-20 at 18.) The only specific matter cited in said letter concerned a week-long cancellation of training classes at Defendant WVFD that Plaintiff had planned to teach (through an affiliation she had with Rockingham County's community college). (<u>See</u> Docket Entry 41-26 at 1-2; <u>see also</u> Docket Entry 28-2 at 2-4.) That letter followed a letter dated June 9, 2009, that Plaintiff sent to Defendant WVFD's chief, in which Plaintiff complained in greater detail about the training class cancellation issue, obliquely referenced "recent personnel issues involving inappropriate discussions of [her] personal life," and asserted in conclusory fashion that she had "been targeted behind the scenes by a select group of 'Good Ole Boys' who lack proper training and knowledge on the correct procedures for operating a tax funded organization." (Docket Entry 28-28 at 21-22.)

By letter to Plaintiff's then-attorney dated July 22, 2009, Plaintiff received notice that Defendant WVFD had hired an attorney to investigate her complaints of discrimination and that said attorney wished to interview Plaintiff about her allegations. (Docket Entry 28-33 at 9.) Defendant WVFD's attorneys continued unsuccessfully to pursue an interview of Plaintiff over the next several months. (<u>See</u> Docket Entry 28-33 at 10-13; Docket Entry 28-

34 at 1-11.)[3]  In October or November of 2009, Plaintiff suffered a knee injury (when she fell through an attic while working on an air conditioner) and took a medical leave of absence from Defendant WVFD.  (Docket Entry 28-26 at 5; Docket Entry 28-27 at 3.)

At a business meeting of Defendant WVFD's members on January 4, 2010, Plaintiff asked for and received permission to speak from Captain Whit Whitley, the officer chairing the meeting.  (Docket Entry 41-40 at 4.)  "[Plaintiff] spoke for about 5 or 6 minutes . . . [and] said she was being discriminated against because she is a woman."  (Id.).  Defendant Hill (a captain with Defendant WVFD) "walked out when [Plaintiff] started speaking."  (Id.)  Defendant Terrell "was present when [Plaintiff] was speaking" and Defendant Rierson "kept interrupting [Plaintiff], badgering her, and trying to argue with her while she was speaking."  (Id.)  Defendant Rierson "said that he was the one who called the community college and cancelled [Plaintiff's] classes."  (Id.)

Defendant Hill thereafter attempted to speak with Plaintiff about the meeting on January 4, 2010, but Plaintiff declined to meet with him because she "didn't want to get involved in a conversation with him in regards to – to the situation."  (Docket Entry 28-27 at 11-13.)  By letter dated January 20, 2010, Defendant Hill reprimanded Plaintiff for causing a "disturbance" during the meeting on January 4, 2010, and for violating Defendant WVFD's

---

[3] During this time, Plaintiff apparently discharged the attorney who originally had contacted Defendant WVFD on her behalf and began exploring other representation.  (See Docket Entry 28-34 at 1-2, 4.)

conduct code by making remarks at said meeting that subjected fellow members to "public ridicule." (Docket Entry 28-22 at 4.)

Subsequently, Plaintiff sent two letters to Defendant WVFD's grievance committee: one demanding action on the complaints she presented in her letter to Defendant WVFD's chief on June 9, 2009, and the other challenging the reprimand from Defendant Hill. (Docket Entry 28-33 at 4-6.)[4] In addition, by separate letter dated January 24, 2010, Plaintiff submitted to Defendant WVFD's grievance committee a "Formal Grievance against [Defendant] Rierson . . . [as] the result of the CHOKING GESTURE that he performed when [Plaintiff] completed her discussion [at the business meeting on January 4, 2010] and was taking [her] seat in front of him." (Id. at 7 (capitalization in original).) According to the letter, "the CHOKING GESTURE that [Defendant] Rierson performed ha[d] been interpreted by a magistrate as a Class I Misdemeanor in the State Of North Carolina as outlined in General Statute: 14-277.1" (Id. (capitalization in original).)[5]

Plaintiff did not see Defendant Rierson make a choking gesture toward her at the meeting on January 4, 2010. (Docket Entry 28-27 at 7, 10.) However, on January 5, 2010, "a firefighter . . . [who]

---

[4] The first letter bears a date of January 22, 2010, and the second letter bears a date of January 23, 2009 (an apparent scrivener's error, given its discussion of events in January 2010). (See Docket Entry 28-33 at 4-6.)

[5] Defendant WVFD's grievance committee met on January 25, 2010, and reviewed Plaintiff's letters of June 9, 2009, and January 22, 23, and 24, 2010. (Docket Entry 28-33 at 8.) "The grievance committee did not take any action because a committee member, Frank Thompson, told [the committee members] that [Defendant WVFD's] lawyer had said that [Plaintiff's] complaints should not be handled by the grievance committee." (Docket Entry 41-40 at 4.)

may have been Aaron Edwards . . . told [Plaintiff] that [Defendant] Rierson had threatened to choke [her] behind [her] back when [she] sat down." (Id. at 6-7.)  In response, Plaintiff "said okay . . . [and] was kind of surprised that [Defendant Rierson] had done that . . . ." (Id. at 7.)  According to Plaintiff:

> Keith Chaney, who is an assistant chief, also told [her] that [Defendant] Rierson had threatened to choke [Plaintiff] behind [her] back when [she] saw [sic] down that night at the January 4th meeting.  [Keith Chaney's] father, Dwight Chaney, also told [Plaintiff] that [Defendant] Rierson had threatened to choke [her] behind [her] back and that Chase Strater and Justin Corum were -- were really talking about it, that they were concerned about it.

(Id.)[6]  Plaintiff then "called Mr. Strater . . . [and] said, 'Chase, did you see [Defendant] Rierson choke me behind my back? . . .  And he said, 'Yeah, [Defendant Rierson] did it.  Me and Justin, we both seen [sic] him.'" (Id.)

Around that same time, Plaintiff "started getting traffic up [her] driveway, started having cars pull in [her] driveway late at night, and they would pull all the way up [her] driveway.  So it wasn't like they were just turning around at the end of [her] driveway." (Id. at 9.)  On one occasion, Plaintiff's roommate, Lori Pegram, "told [Plaintiff] that [Pegram] had seen a vehicle and a bearded man that looked like [Defendant Rierson] pulling up [Plaintiff's] driveway." (Docket Entry 28-28 at 3.)[7]

_____

[6] Other parts of the record indicate that "Chase Strater" actually spells his last name "Strader." (See, e.g., Docket Entry 28-29 at 1.)

[7] According to an affidavit from Pegram dated January 14, 2011, the above-described incident occurred "[o]n or about January 22, 2010," Pegram recognized
(continued...)

On January 25, 2010, Plaintiff filed a "Complaint for No-Contact Order for Stalking or Nonconsensual Sexual Conduct" against Defendant Rierson in Rockingham County District Court. (Docket Entry 28-23 at 4-5.) On said complaint, Plaintiff checked the box bearing these pre-printed allegations:

> The defendant [i.e., Defendant Rierson] has followed on more than one occasion or otherwise tormented, terrorized, or terrified the plaintiff named above [i.e., Plaintiff] with the intent to place the plaintiff in reasonable fear for the plaintiff's safety or the safety of the plaintiff's immediate family or close personal associates or with the intent to cause, and which did cause, the plaintiff to suffer substantial emotional distress by placing the plaintiff in fear of death, bodily injury, or continued torment or terror in that: *(give specific dates and describe in detail what happened and how it placed the plaintiff in fear of safety or how it caused substantial emotional distress.)*

(Id. at 4 (italics in original).)

On the lines that followed, Plaintiff hand-printed:

> On 1-4-10, Larry Rierson sat behind me in a business meeting at the Wentworth Volunteer Fire Dept. I was addressing the members with new business and had the floor. Rierson interrupted me on more than 1 occasion in a hostile manner and told me to be quiet and said I shouldn't even be in the department because bylaws say you have to be a man. At the conclusion of my presentation Rierson made a choking gesture to me behind my back, witnessed by other members, causing them & me to be in fear of some physical violence. The following day Rierson attempted to get me suspended for speaking at the meeting and asked club chair W. Whitley to 'do something about me' and said I should be suspended. Rierson has gone out of town for approximately a month, causing me to fear he may have gotten someone to do his dirty work so he wouldn't be guilty.

---

[7](...continued)
the driver as [Defendant] Rierson and the passenger as [Defendant] Terrell[, and Pegram was] 80 percent sure that it was [Defendant] Rierson and [Defendant] Terrell." (Docket Entry 28-13 at 2-3.)

(<u>Id.</u>)[8]  On the second page of the form, Plaintiff checked a box indicating that she attempted to serve Defendant Rierson with the complaint but could not and hand-wrote this reason:  "He is out of town[.]"  (<u>Id.</u> at 5.)  The relief Plaintiff requested included an order directing Defendant Rierson "to refrain from entering or remaining present at . . . Wentworth Volunteer Fire Dept."  (<u>Id.</u>)

Also on January 25, 2010, Plaintiff filed a misdemeanor criminal charge against Defendant Rierson in Rockingham County District Court alleging that, on January 4, 2010, he violated North Carolina General Statute § 14-277.1, by "threaten[ing] to physically injure the person of [Plaintiff]" in that:

> [Defendant Rierson] rais[ed] his voice in hostile manner and stormed towards [Plaintiff] damanding [sic] that [she] shutup and sit down. [Defendant Rierson] continued this behavior for approximately five to ten minutes. After the presentation, [Defendant Rierson] leaned forward and made a choking gesture to [Plaintiff] while he was setting [sic] behind her back. [Defendant Rierson's] actions put [Plaintiff] in fear of potential physical violence and the threat was made in a manner and under circumstances which would cause a reasonable person to believe that the threat was likely to be carried out and [Plaintiff] believed that the threat would be carried out.

---

[8] An illegible scratchout appears immediately between the third and fourth sentences with Plaintiff's initials "DLS" beside it. (<u>See</u> Docket Entry 28-23 at 4.)  In addition, in the side margin, three partially obscured lines (apparently as a function of photocopying) end with the words "Rockingham Community College seeking to have me disciplined &/or terminated." (<u>Id.</u>)  Defendant WVFD has "admit[ted] that, at the time Plaintiff was a member, it had an old constitution in effect which contained a provision that members of the department must be male." (Docket Entry 28 at 19.)  New by-laws (adopted on April 1, 2010) delete any gender restriction. (<u>See</u> Docket Entry 28-25 at 7, 12, 15.)  Even prior to the by-laws amendment, Defendant WVFD had admitted female members (in addition to Plaintiff). (Docket Entry 28-42 at 3-4.)

(Docket Entry 28-38 at 1.)[9]  In the box for "Witnesses," Plaintiff listed "Chase Strader."  (Id.)

Based on Plaintiff's "Complaint for No-Contact Order for Stalking or Nonconsensual Sexual Conduct," on January 25, 2010, the Rockingham County District Court entered an ex parte order restraining Defendant Rierson from contact with Plaintiff pending a hearing on February 3, 2010.  (Docket Entry 28-37 at 1-2.) Defendant Rierson did not receive notice of the ex parte order until February 8, 2010, at which time he also was arrested on the misdemeanor charge.  (Docket Entry 28-14 at 5.)  The hearing on the "No-Contact" complaint took place on February 17, 2010, at which time the Rockingham County District Court granted Defendant Rierson's motion to dismiss.  (See Docket Entry 28-39 at 1-2.)  As grounds for the dismissal, the order states:  "The Complaint speaks of only one incident and does not allege [illegible] to plaintiff's or her family's safety.  Nor does it allege any type of severe emotional distress."  (Id. at 1.)

That same day, Plaintiff filed another "Complaint for No-Contact Order for Stalking or Nonconsensual Sexual Conduct" against Defendant Rierson.  (Docket Entry 28-40 at 1-5.)  In it, Plaintiff added further details about the events on January 4, 2010, beyond the allegations in the prior such complaint, including:

1) Defendant Rierson told Plaintiff to "shut up and sit down" (id. at 1);

---

[9] Part of the quotation above appears in all capitals in the original, but normal capitalization conventions were utilized here for ease of reading.

2) Defendant Rierson "came toward [Plaintiff] in a threatening manner, waving his hand at [Plaintiff], in a manner to make [Plaintiff] believe he intended to cause [Plaintiff] bodily injury" (id.);

3) Defendant Rierson "glared at [Plaintiff] and his attitude scared [Plaintiff]" (id.); and

4) "[w]hen [Plaintiff] took [her] seat, [Defendant Rierson] leaned forward, across a table gesturing a choking motion behind [Plaintiff's] back with both hands" (id. (emphasis added)).

In addition, Plaintiff described seven other bases for her complaint:

1) an incident on August 8, 2009, when Defendant Rierson confronted Plaintiff at Defendant WVFD's facility and demanded that she sign a new conduct policy and "followed [her] around until [she] was isolated from the crowd and [she] was alone," such that she was "scared" and "felt threatened" (id. at 2);

2) an incident on August 18, 2009, when Defendant Rierson complained to Rockingham County's community college about Plaintiff's "instructional integrity" regarding matters that "were frivolous and unfounded" (id.);

3) Defendant Rierson's communication in September 2009 with other fire-fighters in what Plaintiff termed an attempt "to interfere with the investigation" into the complaints she made to Defendant WVFD in June 2009, by "defaming" and "trying to humiliate" her, "caus[ing] [her] severe emotional anguish" (id.);

4) an incident on October 5, 2009, when Defendant Rierson told other fire-fighters that Plaintiff should "never have been allowed to teach . . . classes at [Defendant WVFD's facility]" on behalf of Rockingham County's community college and that Plaintiff "was a trouble-maker," which caused Plaintiff "severe emotional distress resulting in lack of sleep and intense tension" (id. at 3);[10]

5) an incident on November 6, 2009, when Defendant Rierson "told [Plaintiff] that he called [Rockingham County's community college] complaining on [Plaintiff]" and in so doing used a "'smart, matter-of-fact' tone, abusing his authority, [and] trying to intimidate [Plaintiff]" (id.);

6) an incident on January 5, 2010, when, at a lawyer's office, Defendant Rierson told Captain Whitley "to 'do something about that woman'" and "tried to get [Plaintiff] suspended from [Defendant WVFD]," which Plaintiff construed as an indication that Defendant Rierson would "injur[e] [her] or [her] property," as well as her "livelihood [sic], [her] financial status, and [her] educational certification(s)," all of which caused her "severe emotional distress" (id. at 3-4 (emphasis in original)); and

7) the fact that Plaintiff's "witnesses have been threatened if they testify on [her] behalf" (id. at 4).

On February 24, 2010, a hearing on the foregoing complaint occurred in Rockingham County District Court. (See Docket Entry

_____

[10] In connection with that same allegation, Plaintiff asserted that Defendant Rierson "always cusses using the words 'son-of-a-bitch' in every dialogue." (Docket Entry 28-40 at 3.)

28-41 at 1.) The witnesses included Plaintiff, Chase Strader, and Captain Whitley. (See id. at 2-8; Docket Entry 41-39 at 1-17.) At the end of the hearing, the complaint was dismissed. (Docket Entry 28-28 at 4; Docket Entry 41-15 at 11-12.) As the basis for dismissal, the Rockingham County District Court checked the box stating that Plaintiff "failed to prove grounds for issuance of a no-contact order." (Docket Entry 41-15 at 11.) Plaintiff then dismissed the criminal charge she had filed against Defendant Rierson. (Docket Entry 28-28 at 4.)[11]

Normally, business meetings of the membership of Defendant WVFD occur on the first Monday of the month, but the meeting scheduled for March 1, 2010, was cancelled because Assistant Chief Chaney's grandmother had died. (Docket Entry 42 at 31-32.) "[I]n the past when a business meeting ha[d] been canceled for any reason, regardless of whether it was a death or storm or whatever, they never reschedule[d] it within the same month. They just always wait[ed] until the next month." (Id. at 31.) However, the March 2010 business meeting went forward on March 8, 2010, when a training session had been scheduled. (Id.; Docket Entry 30-6 at 1-2; Docket Entry 41-40 at 4-5.) "At the meeting, [Defendant] Hill made a motion to vote [Plaintiff] out of [Defendant WVFD] for malicious prosecution of a member." (Docket Entry 41-40 at 5.) "[Plaintiff] was voted out 15 to 10." (Id.)

---

[11] According to Plaintiff, she dismissed the criminal charge on the advice of an Assistant District Attorney. (Docket Entry 30-10 at 3.)

## Summary Judgment Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court "may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000). Instead, it "must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-movant's favor." <u>Matvia v. Bald Head Island Mgt., Inc.</u>, 259 F.3d 261, 266 (4th Cir. 2001).

"[T]here is no burden upon 'the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact.' Rather, 'the burden on the moving party may be discharged by "showing" — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case.'" <u>Carr v. Deeds</u>, 453 F.3d 593, 608 (4th Cir. 2006) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)) (internal emphasis omitted). Conversely, "[t]he party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but 'must come forward with specific facts showing that there is a genuine issue for trial.'" <u>Emmett v. Johnson</u>, 532 F.3d 291, 297 (4th Cir. 2008) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)). <u>See also</u> <u>Francis v. Booz, Allen &</u>

Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

### Abandoned Claims

As documented in the Procedural Background section, see supra, pp. 5-6, Plaintiff's response to Defendants' summary judgment motion fails to contest Defendants' arguments as to their entitlement to judgment as a matter of law on various causes of action in the FAC. Plaintiff's failure to respond to Defendants' summary judgment motion regarding these claims warrants summary judgment in Defendants' favor on said claims. See Allen v. Federal Express Corp., No. 1:09CV17, 2011 WL 1260225, at *9 n.5 (M.D.N.C. Mar. 31, 2011) (unpublished) (Osteen, J.) ("Summary judgment is also appropriate on this issue because Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. 45) contains no argument in response to Defendant's motion for summary judgment as to the retaliatory demotion claim."); Day v. Advance Stores Co., Inc., No. 1:09CV664, 2010 WL 1286666, at *8 n.5 (M.D.N.C. Mar. 29, 2010) (Dixon, M.J.) ("Plaintiff does not even assert an argument regarding this claim in his opposition brief, and he has therefore waived this issue."), recommendation adopted, slip op. (M.D.N.C. July 19, 2010) (Tilley, S.J.) (unpublished); Rogers v. Unitrim Auto and Home Ins. Co., 388 F. Supp. 2d 638, 641 (W.D.N.C. 2005) (ruling that plaintiffs who made no argument regarding particular claim in response to summary judgment motion

"effectively abandon[ed]" said claim); <u>Wainright v. Carolina Motor Club, Inc.</u>, No. 1:03CV1185, 2005 WL 1168463, at *13 (M.D.N.C. Apr. 27, 2005) (unpublished) (Sharp, M.J.) ("At the outset, the Court notes that [the plaintiff] failed to make any argument in her brief regarding her failure to promote claim.  In the face of [the defendant's] arguments and supporting evidence in its brief in support of summary judgment, [the plaintiff's] failure to argue this claim is tantamount to abandonment of the claim."); <u>Brand v. North Carolina Dep't of Crime Control and Pub. Safety</u>, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (Bullock, J.) ("In [the plaintiff's] brief in response to [the defendants'] motion for summary judgment, [the plaintiff] does not address . . . his hostile work environment claim.  By failing to respond, [the plaintiff] concedes that he has not stated a hostile work environment claim.").

Accordingly, the Court should enter summary judgment against Plaintiff on:

1) Plaintiff's Section 1983 claim against Defendant WVFD for its alleged retaliation against her for speaking out about sex discrimination, training irregularities, safety concerns, and other matters of public concern occurring at Defendant WVFD, in violation of her First Amendment Free Speech Clause rights (which appeared within Plaintiff's First Claim for Relief);

2) Plaintiff's Section 1983 claim against Defendants Terrell, Rierson, and Hill for alleged violations of her First Amendment Free Speech Clause and Fourteenth Amendment Equal Protection Clause

rights (which encompassed all of Plaintiff's Second Claim for Relief); and

3) Plaintiff's conspiracy cause of action against Defendants Terrell, Rierson, and Hill under Section 1985(3) (which appeared within Plaintiff's Third Claim for Relief).

<u>Section 1983 Claim against Defendant WVFD for Removing Plaintiff in Retaliation for Her Testimony about Defendant Rierson, in Violation of Her First Amendment Free Speech Clause Rights</u>

In her First Claim for Relief (brought pursuant to Section 1983), Plaintiff alleged that "[Defendant WVFD] acted under the color of state law to deprive [her] of her <u>First Amendment right to free speech by retaliating against her for testifying in open court against Defendant Rierson</u>, a board member of [Defendant WVFD]." (Docket Entry 8, ¶ 81.) Both Plaintiff and Defendants have moved for summary judgment on this claim. (<u>See</u> Docket Entry 28 at 31-33, 36-37; Docket Entry 30 at 1-15.) In moving for summary judgment, Plaintiff made clear that she contended that Defendant WVFD "violat[ed] her First Amendment rights <u>by revoking her membership</u> [in Defendant WVFD] in retaliation for [her] bringing and testifying in a civil suit against Defendant [] Rierson." (Docket Entry 30 at 1-2 (citing Docket Entry 8, ¶ 81) (emphasis added).)

"To state a claim under § 1983, a plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States." <u>Wahi v. Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 (4th Cir. 2009). "In cases under s 1983, 'under color' of law has consistently been treated as the same thing as the 'state

action' required under the Fourteenth Amendment." <u>United States v.</u> <u>Price</u>, 383 U.S. 787, 794 n.7 (1966). Similarly, for a plaintiff "[t]o raise [a] First Amendment argument, the [defendant's] actions must constitute state action." <u>Kidwell v. Transportation Commc'ns</u> <u>Int'l Union</u>, 946 F.2d 283, 297 (4th Cir. 1991).

Plaintiff has argued and Defendants have not disputed that, in the context of this case, Defendant WVFD qualifies as a "state actor." (<u>See, e.g.</u>, Docket Entry 30 at 5-6; Docket Entry 35 at 1-14.)[12] This Memorandum Opinion thus proceeds on that assumption. "A necessary corollary of [this] conclusion – that [Defendant WVFD's] personnel decisions are 'under color' of law for purposes of section 1983 – is . . . that those decisions must comport with the First Amendment of the Constitution. [The Court] thus [must] turn to the next issue to be considered in this [case]: whether [Plaintiff] can carry [her] burden to establish a violation thereof." <u>Goldstein v. Chestnut Ridge Volunteer Fire Co.</u>, 218 F.3d 337, 349 (4th Cir. 2000).

The United States Court of Appeals for the Fourth Circuit has held that "[t]he basic First Amendment principles controlling the issue here have long been established." <u>Id.</u> at 351. Specifically:

> First, to trigger First Amendment protection, <u>the speech</u> <u>at issue must relate to matters of public interest</u>.

---

[12] According to the United States Court of Appeals for the Fourth Circuit, in assessing whether a volunteer fire department qualifies as a state actor, "the totality-of-the-circumstances approach applied in <u>Janusaitis[ v. Middlebury</u> <u>Volunteer Fire Dep't</u>, 607 F.2d 17, 20-25 (2d Cir. 1979)] is correct . . . ." <u>Goldstein v. Chestnut Ridge Volunteer Fire Co.</u>, 218 F.3d 337, 348 (4th Cir. 2000) (ruling that, under circumstances of that case, volunteer fire department qualified as state actor).

> Second, the employee's interest in First Amendment
> expression must outweigh the employer's interest in
> efficient operation of the workplace. Third, the
> employee must establish retaliation of some kind – that
> he was deprived of a valuable government benefit or
> adversely affected in a manner that, at the very least,
> would tend to chill his exercise of First Amendment
> rights. Finally, the employee must establish a causal
> relationship between the protected expression and the
> retaliation . . . .

Id. at 351-52 (internal citations and quotation marks omitted)
(emphasis added).[13]

Plaintiff cannot satisfy the first of these elements (i.e.,
that "the speech at issue must relate to matters of <u>public
interest</u>," <u>id.</u> at 351 (emphasis added)), because she has conceded
that "the dispute that gave rise to the lawsuit [Plaintiff filed
against Defendant Rierson for which Defendant WVFD allegedly
retaliated against Plaintiff] was a <u>private matter</u> between
Plaintiff [] and Defendant Rierson" (Docket Entry 38 at 8
(emphasis added)). <u>See</u> <u>Goldstein</u>, 218 F.3d at 352 (emphasizing
that, in assessing whether "employee's speech addresses a matter of
public concern," courts must ensure that "complaints of
interpersonal discord[] are not treated as matters of public
policy");[14] <u>Stroman v. Colleton Cnty. Sch. Dist.</u>, 981 F.2d 152, 156

---

[13] "[T]he first three elements are ultimately questions of law [and]
. . . [t]he fourth . . . is one of fact . . . ." <u>Goldstein</u>, 218 F.3d at 352.

[14] The fact that the Fourth Circuit applied the "public concern"
requirement to a volunteer fire-fighter's retaliation claim in <u>Goldstein</u>
forecloses Plaintiff's suggestion that said requirement does not apply to her
because she disclaims "public employee" status (<u>see</u> Docket Entry 38 at 7-8). In
other words, Plaintiff cannot, on the one hand, contend that, for purposes of the
First Amendment, Defendant WVFD constituted a state actor, but maintain, on the
other hand, that her service as a fire-fighter for Defendant WVFD failed to
                                                              (continued...)

(4th Cir. 1992) (observing that speech about "matters of personal interest do[es] not constitute speech about matters of public concern . . . protected by the First Amendment"); <u>Arvinger v. Mayor and City Council of Baltimore</u>, 862 F.2d 75, 78-79 (4th Cir. 1988) ("A statement that does not address the operation of the government entity in question . . . must still involve a matter of public concern in order to be eligible for first amendment protection . . . . A statement that involves private interests of any kind, and that is otherwise devoid of public concern, is not entitled to protection under [First Amendment retaliation jurisprudence].").

Plaintiff's instant First Amendment claim thus fails as a matter of law because where, as here, the speech at issue "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for [a court] to scrutinize the reasons for her discharge." <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983).[15] Plaintiff's dismissal by Defendant WVFD "may not be fair, but ordinary dismissals from government service which violate no

---

[14](...continued)
qualify as public employment for purposes of the First Amendment. Further, the United States Supreme Court "has rejected [an] agency law definition of 'employee' [in this context and held that a state actor's] . . . legitimate reasons for regulating its employees' speech apply equally to independent contractors." <u>Braswell v. Haywood Reg'l Med. Ctr.</u>, 234 Fed. Appx. 47, 53 (4th Cir. 2007) (citing <u>Board of Cnty. Comm'rs v. Umbehr</u>, 518 U.S. 668, 677-78 (1996)).

[15] Nor does the context of the speech at issue (i.e., testimony in court) convert said speech into speech about a matter of public concern. <u>See</u> <u>Arvinger</u>, 862 F.2d at 79 (ruling that, where content of speech addressed private interests, it was "irrelevant for first amendment purposes that the statement was made in the course of an official hearing"). Moreover, the Supreme Court has clarified that the same "public concern" requirement would apply even if Plaintiff had proceeded under the First Amendment's Petition Clause, rather than its Free Speech Clause. <u>See</u> <u>Borough of Duryea, Pa. v. Guarnieri</u>, 131 S. Ct. 2488 (2011).

fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable." Id.  The Court therefore should grant summary judgment to Defendants (and should decline to grant summary judgment to Plaintiff) on this claim.

<u>Section 1983 Claim against Defendant WVFD for Removing
Plaintiff Because She Was a Woman, in Violation of Her
Fourteenth Amendment Equal Protection Clause Rights</u>

Plaintiff's First Claim for Relief (brought pursuant to Section 1983) asserts that "[Defendant WVFD] acted under the color of state law to deprive the Plaintiff of her <u>Fourteenth Amendment right to the equal protection of the law by removing her from the fire department because she is a woman</u>." (Docket Entry 8, ¶ 82 (emphasis added).)  "Public employees are entitled to bring § 1983 actions asserting claims based on equal protection violations.  To succeed on such a claim, . . . [a plaintiff must] demonstrate that [she] has been treated differently from others with whom [she] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." <u>Adams v. Trustees of Univ. of N.C.-Wilmington</u>, 640 F.3d 550, 566 (4th Cir. 2011) (internal citations and quotation marks omitted).[16]

---

[16] "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001).  Any disparate treatment based on gender "is subject to heightened scrutiny and will fail unless it serves important governmental objectives and is substantially related to achievement of those objectives." <u>Knussman v. Maryland</u>, 272 F.3d 625, 635 (4th Cir. 2001) (internal brackets and quotation marks omitted).

When a plaintiff pursues "a claim for discrimination under
. . . § 1983 . . . pursuant to the Equal Protection Clause . . .[,
the] elements of [the] claim under . . . § 1983 mirror those of
Title VII:    A plaintiff must provide direct evidence of
discriminatory treatment or proceed under the framework set forth
in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) . . . ."
<u>McCray v. Pee Dee Reg'l Transp. Auth.</u>, 263 Fed. Appx. 301, 305 (4th
Cir. 2008) (internal parallel citations omitted); <u>accord</u> <u>Lightner</u>
<u>v. City of Wilmington, N.C.</u>, 545 F.3d 260, 263 n.* (4th Cir. 2008)
("[T]he <u>McDonnell Douglas</u> framework applies to discrimination
claims under Title VII, § 1981, and § 1983."); <u>Mullen v. Princess</u>
<u>Anne Volunteer Fire Co., Inc.</u>, 853 F.2d 1130, 1136 (4th Cir. 1988)
(ruling that standard "developed in the Title VII disparate
treatment context . . . is applicable to cases, such as suits under
§ 1981 and § 1983, where proof of discriminatory intent is
required"); <u>Abasiekong v. City of Shelby</u>, 744 F.2d 1055, 1058 (4th
Cir. 1984) ("[C]laims under 42 U.S.C. § 1981 and § 1983 may be
reviewed under the *McDonnell Douglas* three-step format . . . .").

Plaintiff's entire argument under the heading "WVFD is not
entitled to summary judgment on [her] Fourteenth Amendment Claim"
consists of the following two paragraphs:

> WVFD [sic] actions against Plaintiff Stanley violated her
> clearly established Fourteenth Amendment rights.    In
> 2010, the contours of the right to be free from disparate
> treatment or disparate discipline were conclusively
> drawn.    In 1973, the Fourth Circuit held that government
> decisions based on gender violate the Fourteenth
> Amendment Equal Protection Clause.    <u>Eslinger v. Thomas</u>,
> 476 F.2d 225, 230 (4th Cir. 1973).    Such decisions must
> be supported by a close and substantial relationship to

> an important government interest. <u>Personnel</u>
> <u>Administrator of Massachusetts v. Feeney</u>, 442 U.S. 256,
> 273, 99 S. Ct. 2282, 2293, 60 L. Ed. 2d 870 (1979).
>
> In this case, WVFD issued Plaintiff Stanley a reprimand
> accusing her of disrupting the January 4, 2010 Club
> meeting. However, WVFD did not reprimand Defendant
> Rierson or Defendant Hill, who actually disrupted the
> meeting. Secondly, WVFD dismissed Plaintiff Stanley by
> holding an unannounced public vote, holding her up to
> ridicule. However, male members were privately asked to
> leave. WVFD has not explained how this disparate
> treatment was substantially related to an important
> government interest.

(Docket Entry 41 at 18-19.)

This argument does not assert that the record contains direct evidence to substantiate Plaintiff's claim (as articulated in her FAC) that Defendant WVFD "remov[ed] her from the fire department because she is a woman" (Docket Entry 8, ¶ 82). Accordingly, Plaintiff's Fourteenth Amendment claim against Defendant WVFD for removal based on gender can proceed only if she has record evidence sufficient to make out said claim under the <u>McDonnell Douglas</u> framework, which requires "1) that [the plaintiff] establish a *prima facie* case of discrimination, 2) that the [defendant] be given the opportunity to rebut by articulating a legitimate, non-discriminatory reason for his discharge, and 3) that [the plaintiff] finally have the opportunity to show pretext . . . ." <u>Abasiekong</u>, 744 F.2d at 1058.

As recently set forth by the Fourth Circuit, "the elements of a prima facie case of discrimination . . . are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly

situated employees outside the protected class." <u>Coleman v.</u>
<u>Maryland Ct. of App.</u>, 626 F.3d 187, 190 (4th Cir. 2010).[17]  In sex
discrimination cases, "[t]he first element is really a non-issue
because everyone is male or female." <u>Steinhauer v. DeGolier</u>, 359
F.3d 481, 484 (7th Cir. 2004).  Further, Defendants have not
asserted that the record contains insufficient evidence (if viewed
in the light most favorable to Plaintiff) to support a finding of
"satisfactory job performance." (<u>See</u> Docket Entry 28 at 18-29;
Docket Entry 45 at 1-3.)[18]  Sufficient evidence also exists on the
"adverse employment action" element in that the record indisputably
reflects that Defendant WVFD, through a vote of its membership,
removed Plaintiff from her position as a fire-fighter.  <u>See</u>
<u>generally</u> <u>Boone v. Goldin</u>, 178 F.3d 253, 255-56 (4th Cir. 1999)

---

[17] Additionally, "as a general rule, . . . plaintiffs [who allege
discriminatory dismissal] must show that they were replaced by someone outside
their protected class in order to make out a prima facie case." <u>Miles v. Dell,</u>
<u>Inc.</u>, 429 F.3d 480, 486 (4th Cir. 2005). Defendants have not based their instant
summary judgment motion on this element of the prima facie case. (<u>See</u> Docket
Entry 28 at 18-29; Docket Entry 45 at 1-3.) Accordingly, this Memorandum Opinion
will not address whether said element applies in this case or whether the record
contains sufficient evidence from which Plaintiff could make out said element.

[18] Defendants have identified record evidence that certain members of
Defendant WVFD voted to remove Plaintiff as a fire-fighter because of perceived
shortcomings in her job performance (<u>see</u> Docket Entry 28 at 24-26 (citing
evidence from members who attributed their removal votes to their perception
"that when Plaintiff was elected to the position of sergeant, she became
unnecessarily confrontational towards other members . . . and she often bullied
other members," that "some members of the fire department say that they wanted
to quit the fire department because of difficulties they had working with
Plaintiff," and that Plaintiff "often violated the department's rule about
canceling further response to calls before properly assessing the scene or when
a superior officer was on scene")); however, because Defendants failed to assert
that the record lacks sufficient evidence to support a contrary finding (i.e.,
that Plaintiff had performed her job satisfactorily), the Court should not enter
judgment as a matter of law for Defendant WVFD based on this element of the
<u>McDonnell Douglas</u> prima facie test.

(noting that "discharge" from position represents "typical" form of "adverse employment action" that can support discrimination claim).

Defendants, however, have argued that the record cannot support a finding that Plaintiff's dismissal from Defendant WVFD constituted treatment different from that received by similarly situated male fire-fighters. (See Docket Entry 28 at 27 (citing evidence "that members voted to dismiss Plaintiff from her membership with the department . . . [because] Plaintiff had [Defendant Rierson] arrested," noting that Plaintiff admitted in her deposition that she had no knowledge "of any other member of the fire department who has had another member arrested," and arguing that Plaintiff therefore "cannot show that she was dismissed from the department because of her gender"); Docket Entry 45 at 3 (asserting that Plaintiff's Equal Protection Clause claim "fails because there are no similarly situated male members of the fire department who were treated differently as she testified in her deposition that she is not aware of any other member, male or female, who has had another member arrested").) In the face of this argument, Plaintiff has pointed to two things:

1) Defendant WVFD "issued [her] a reprimand accusing her of disrupting the January 4, 2010 Club meeting. However, WVFD did not reprimand Defendant Rierson or Defendant Hill, who actually disrupted the meeting." (Docket Entry 41 at 18.); and

2) Defendant WVFD "dismissed [her] by holding an unannounced public vote, holding her up to ridicule. However, male members were privately asked to leave." (Id.)

The first of these arguments addresses differential treatment of allegedly similarly situated persons not as to dismissal, but rather as to a lesser form of discipline not directly related to the ultimate dismissal at issue. Plaintiff's second foregoing argument points to alleged differences in the <u>method</u> of dismissal (i.e., by seeking resignation prior to any removal vote instead of proceeding directly to a removal vote), rather than to the <u>fact</u> of dismissal. Plaintiff's FAC, however, clearly predicated her Equal Protection Clause claim on the <u>fact</u>, not the <u>method</u>, of her removal. (<u>See</u> Docket Entry 8, ¶ 82.) Moreover, given Plaintiff's prior response to all actions she perceived as adverse (i.e., to contest such actions by filing grievances (<u>see</u> Docket Entry 41 at 5, 8 (discussing evidence of Plaintiff's grievances)), Defendants properly have observed that "there is no evidence that simply asking [Plaintiff] to resign would have been an affective [sic] means to [secure her removal]" (Docket Entry 45 at 3).

Under these circumstances, Plaintiff has failed to identify sufficient evidence that her dismissal from Defendant WVFD represented treatment different from that received by any <u>similarly situated</u> male. <u>See generally</u> <u>Haywood v. Locke</u>, 387 Fed. Appx. 355, 359 (4th Cir. 2010) (ruling that, to satisfy similarly situated element, "plaintiffs are required to show that they are similar in all relevant respects to their comparator . . . [including that they] 'engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'" (citing and quoting

-30-

<u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 583 (6th Cir. 1992)));

<u>accord</u> <u>Heyward v. Monroe</u>, No. 97-2430, 166 F.3d 332 (table), 1998

WL 841494, at *2 (4th Cir. Dec. 7, 1998) (unpublished); <u>Odom v.</u>

<u>International Paper Co.</u>, 652 F. Supp. 2d 671, 688 (E.D. Va. 2009),

<u>aff'd</u>, 381 Fed. Appx. 246 (4th Cir. 2010); <u>Holtz v. Jefferson</u>

<u>Smurfit Corp.</u>, 408 F. Supp. 2d 193, 206 (M.D.N.C. 2006), <u>aff'd</u>, 242

Fed. Appx. 75 (4th Cir. 2007). In the absence of such a showing,

Plaintiff cannot make out a prima facie case of discriminatory

dismissal based on sex under the <u>McDonnell Douglas</u> framework.[19]

Given the foregoing analysis, the Court should enter summary

judgment against Plaintiff on her Section 1983 claim that Defendant

WVFD violated her rights under the Equal Protection Clause by

removing her from the position of fire-fighter based on her gender.

<u>Section 1985(2) Claim against Defendants<br>Terrell, Rierson, and Hill for Conspiracy</u>

In her FAC, Plaintiff alleged that Defendants Terrell,

Rierson, and Hill violated Section 1985(2) by "conspiring to: a)

---

[19] Alternatively (and for similar reasons), Plaintiff has failed to come forward with sufficient evidence that Defendant WVFD's articulated non-discriminatory rationale for her dismissal (i.e., "that members voted to dismiss Plaintiff from her membership with the department based on her conduct towards other members of the department, including [Defendant] Rierson, whom Plaintiff had arrested on baseless charges, and because her conduct was causing division and lower morale and participation in the fire department" (Docket Entry 28 at 27)) represented pretext for discrimination based on gender. <u>See generally</u> <u>Allen v. BMW Mfg. Co., LLC</u>, 260 Fed. Appx. 623, 624-25 (4th Cir. 2008) (citing dissimilarity of circumstances identified by plaintiff as reflecting differential treatment of similarly situated employee from outside plaintiff's protected class in ruling that plaintiff failed to come forward with sufficient evidence of pretext to overcome defendant's non-discriminatory explanation); <u>Pence v. Tenneco Auto. Operating Co., Inc.</u>, 169 Fed. Appx. 808, 811 (4th Cir. 2006) ("[The plaintiff] attempts to demonstrate pretext by proffering evidence showing that similarly situated employees were not fired. However, . . . none of the employees whom [the plaintiff] relies upon are actually similarly situated.").

deter by intimidation or threat one or more witnesses in [her] then pending court action for a restraining order against Defendant Rierson; b) retaliate against [her] for testifying in her then pending court action for a restraining order against Defendant Rierson; and c) impede, hinder, obstruct, or defeat the due course of justice in the Rockingham County District Court." (Docket Entry 8, ¶ 98.)  Section 1985(2) provides as follows:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2).[20]

Defendants have moved for summary judgment on Plaintiff's instant Section 1985(2) claim on the ground, inter alia, that said cause of action is "barred by the doctrine of intracorporate

_____

[20] In sum, "the first half of § 1985(2) . . . prohibits two or more persons from conspiring to deter by force, intimidation, or threat, any party or witness from attending or testifying truthfully in a federal court . . . [and] the second half of § 1985(2) . . . prohibit[s] conspiracies to deprive any person of the equal protection of the laws . . . ." Bloch v. Mountain Mission Sch., No. 86-1279, 846 F.2d 69 (table), 1988 WL 45433, at *1 (4th Cir. May 2, 1988) (unpublished).

immunity." (Docket Entry 28 at 40.) More specifically, Defendants have argued that, because Defendants Terrell, Rierson, and Hill "are all members of [Defendant WVFD], it is impossible that they conspired against Plaintiff in any way due to the operation of the intracorporate conspiracy doctrine." (Id. at 40-41; see also id. 41 (observing that "Plaintiff does not claim that anyone outside the fire department conspired against her").)

The intracorporate immunity doctrine recognizes that "'[i]t is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985) (quoting Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952)). In other words, "under the intracorporate immunity doctrine, . . . corporate employees cannot conspire with each other . . . ." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002); accord Iglesias v. Wolford, 539 F. Supp. 2d 831, 836 (E.D.N.C. 2008) ("A corporation's officers, employees, or agents are mere extensions of the corporation, and an agreement between such personnel . . . is therefore not a conspiracy."). The Fourth Circuit has held said doctrine applicable to claims under Section 1985(2), even where the

plaintiff sued officials and employees of a government entity in their individual capacities. See Buschi, 775 F.2d at 1251-53.[21]

In her response, Plaintiff did not contest the general applicability of the intracorporate immunity doctrine to claims under Section 1985(2); instead, she asserted that "[t]he intracorporate conspiracy doctrine does not apply when the individual conspirators have an independent personal stake in achieving the corporation's illegal objective." (Docket Entry 41 at 21 (citing Buschi, 775 F.2d at 1251-53).) Regarding the "independent personal stake" exception to the intracorporate immunity doctrine, this Court (per then-Senior District Judge Hiram H. Ward) has stated as follows:

> The personal stake exception was not initially defined in a careful manner which resulted in criticism that the exception threatened to swallow the rule. In an effort to limit the scope of this exception, the [Fourth Circuit] . . . held that the personal stake exception required that there be a personal *financial* stake involved. This limitation has also been applied in an unpublished opinion where the [Fourth Circuit] specifically refused to expand the personal stake exception to include bad faith and personal motives.

Turner v. Randolph Cnty., N.C., 912 F. Supp. 182, 186 (M.D.N.C. 1995) (internal citations omitted) (emphasis in original) (citing Oksanen v. Page Mem'l Hosp., 945 F.2d 696, 705 (4th Cir. 1991), and Locus v. Fayetteville State Univ., No. 88-2561, 870 F.2d 655

---

[21] Perhaps in recognition of the fact that the doctrine in question applies not just to corporations, but to other forms of organizations as well, the Fourth Circuit has, at times, referred to it as "intraenterprise immunity." See Patel v. Scotland Mem'l Hosp., No. 95-2704, 91 F.3d 132 (table), 1996 WL 383920, at *2-3 (4th Cir. July 10, 1996) (unpublished); Oksanen v. Page Mem'l Hosp., 945 F.2d 696, 705 (4th Cir. 1991).

(table), 1989 WL 21442 (4th Cir. Mar. 8, 1989) (unpublished), respectively); accord Iglesias, 539 F. Supp. 2d at 836-38; Saleh v. Virginia State Univ., No. 3:97CV460R, 1999 WL 34798179, at *20 (E.D. Va. Feb. 25, 1999) (unpublished), aff'd on other grounds sub nom., Saleh v. Upadhyay, 11 Fed. Appx. 241 (4th Cir. 2001).

Plaintiff has not attempted to identify record evidence of the requisite independent personal financial stake of the alleged conspirators (see Docket Entry 41 at 21-22);[22] accordingly, the intracorporate immunity doctrine applies and Plaintiff's cause of action under Section 1985(2) thus fails as a matter of law, such that the Court should grant summary judgment for Defendants Terrell, Rierson, and Hill on said claim.

### Section 99D-1 Claim against Defendants Terrell, Rierson, and Hill for Conspiracy

Plaintiff's FAC asserts a cause of action under North Carolina state law (specifically, Section 99D-1) against Defendants Terrell, Rierson, and Hill for "conspiring to interfere with [her] exercise or enjoyment of rights secured by the United States Constitution

---

[22] Nor did Plaintiff seek to invoke the other recognized exception to the intracorporate immunity doctrine (i.e., that, "'while authorized acts of the officials would constitute corporate action, (and hence would avoid a conspiracy charge), unauthorized acts would not,'" Buschi, 775 F.2 at 1253 (quoting Hodgin v. Jefferson, 447 F. Supp. 804, 807 (D. Md. 1978))). (See Docket Entry 41 at 21-22.)  Moreover, any such argument would lack merit.  See Eggleston v. Prince Edward Volunteer Rescue Squad, Inc., 569 F. Supp. 1344, 1352 (E.D. Va. 1983) ("Defendants' actions culminating in plaintiff being expelled from the Rescue Squad at the 12 May 1983 general membership meeting were within the scope of defendants' responsibilities to the Squad as individual members. . . . Plaintiff's argument thus would make every membership action a conspiracy merely because, by the nature of such an organization, it must meet, discuss, and vote. As the individual defendants acted within the scope of their authority as members, no conspiracy existed . . . ."), aff'd, No. 83-1867, 742 F.2d 1448 (table) (4th Cir. Sept. 4, 1984).

and the North Carolina Constitution because [she] is a woman."
(Docket Entry 8, ¶ 100.)  Defendants have contended that the
intracorporate immunity doctrine (described above, see supra, pp.
33-34) bars this claim.  (Docket Entry 28 at 40 ("Plaintiff's
federal and state conspiracy claims are barred by the doctrine of
intracorporate immunity.").)  Plaintiff has countered that "North
Carolina law does not recognize the intracorporate conspiracy
doctrine."  (Docket Entry 41 at 19.)

"[T]he highest court of the state is the final arbiter of what
is state law.  When it has spoken, its pronouncement is to be
accepted by federal courts as defining state law unless it has
later given clear and persuasive indication that its pronouncement
will be modified, limited or restricted." West v. American Tel. &
Tel. Co., 311 U.S. 223, 236 (1940).  Moreover, "[a] state is not
without law save as its highest court has declared it.  There are
many rules of decision commonly accepted and acted upon by the bar
and inferior courts which are nevertheless laws of the state
although the highest court of the state has never passed upon
them."  Id.  Accordingly, "it is the duty of [a federal court
facing a question of state law] to ascertain from all the available
data what the state law is and apply it . . . ." Id. at 237.
"Where an intermediate appellate state court rests its considered
judgment upon the rule of law which it announces, that is a datum
for ascertaining state law which is not to be disregarded by a
federal court unless it is convinced by other persuasive data that
the highest court of the state would decide otherwise." Id.

Plaintiff has cited <u>Lenzer v. Flaherty</u>, 106 N.C. App. 496, 511-12, 418 S.E.2d 276, 285-86 (1992), in support of its position that "North Carolina law does not recognize the intracorporate conspiracy doctrine." (Docket Entry 41 at 19.) In fact, the <u>Lenzer</u> Court did not render a decision as to the applicability of said doctrine under North Carolina law; instead, after stating that its "research disclose[d] no North Carolina case in which the doctrine ha[d] been adopted as a defense to civil conspiracy" (and observing that, although the Fourth Circuit had adopted the doctrine in relation to federal conspiracy statutes, the United States Court of Appeals for the Eighth Circuit had declined to do so), the <u>Lenzer</u> Court assumed that the doctrine applied to the case before it, but ruled that a material question of fact existed as to whether an exception to the doctrine attached. See <u>Lenzer</u>, 106 N.C. App. at 511-12, 418 S.E.2d at 285-86.[23]

Moreover, more recently, the North Carolina Court of Appeals expressly (not just assumedly) applied the intracorporate immunity doctrine (but found the allegations in the complaint before it sufficient to invoke an exception to said doctrine). See <u>State ex rel. Cooper v. Ridgeway Brands Mfg., LLC</u>, 184 N.C. App. 613, 624-26, 646 S.E.2d 790, 798-99 (2007), <u>aff'd in part and rev'd in part</u>

---

[23] Multiple federal courts have construed <u>Lenzer</u> in this fashion. See <u>In re Parmalat Sec. Litig.</u>, 479 F. Supp. 2d 332, 345 & n.72 (S.D.N.Y. 2007); <u>Cloaninger v. McDevitt</u>, No. 106cv135, 2006 WL 2570586, at *8 & n.4 (W.D.N.C. Sept. 3, 2006) (unpublished). These courts then looked to decisions from North Carolina state trial courts and/or other federal district courts construing North Carolina law and concluded therefrom that North Carolina law did embrace the intracorporate immunity doctrine. See <u>In re Parmalat</u>, 479 F. Supp. 2d at 345 & n.73; <u>Cloaninger</u>, 2006 WL 2570586, at *8 & n.4.

<u>on other grounds</u>, 362 N.C. 431, 666 S.E.2d 107 (2008). This Court (per United States District Judge Thomas D. Schroeder) and at least one other federal court subsequently has construed <u>Ridgeway Brands</u> as establishing that North Carolina law recognizes the intracorporate immunity doctrine. See <u>Alexander v. City of Greensboro</u>, 762 F. Supp. 2d 764, 785, 824 (M.D.N.C. 2011); <u>Marqae, Inc. v. Clear Link Techs., LLC</u>, No. 2:07CV916CW, 2008 WL 5377932, at *2 n.2 (D. Utah Dec. 22, 2008) (unpublished).

Under these circumstances, the Court should conclude that the intracorporate immunity doctrine applies to Plaintiff's instant state law conspiracy claim and warrants entry of summary judgment against Plaintiff on said claim.[24]

Defendants' Motion to Strike

Defendants have moved to strike all or parts of the following materials submitted by Plaintiff in connection with the summary judgment briefing: 1) two exhibits to Plaintiff's Declaration (Docket Entries 38-10, 38-11); 2) Plaintiff's Second Declaration (Docket Entry 41-20); and 3) an exhibit to a non-party's deposition (Docket Entry 41-34). (<u>See</u> Docket Entry 43 at 1.) According to Defendants, the challenged portions of the record violate Federal Rule of Civil Procedure 56(c)(4)'s personal knowledge and admissibility requirements. (<u>See</u> Docket Entry 44 at 1-7.) Plaintiff has responded that the materials in question fail to

---

[24] As discussed in the preceding subsection, <u>see</u> <u>supra</u>, pp. 34-35 & n.22, Plaintiff has not identified any evidence to support the view that an exception to the intracorporate immunity doctrine would attach in this case.

qualify as inadmissible hearsay either because she does not offer them for the truth of the matter(s) asserted, they constitute admissions of a party opponent, and/or they represent prior consistent statements of a witness. (<u>See</u> Docket Entry 46 at 2-6.) If considered for the purposes and in the manner suggested by Plaintiff, the record materials Defendants seek to strike would not affect the analysis set forth in this Memorandum Opinion regarding the various summary judgment issues. The Court therefore will deny Defendants' instant Motion to Strike (Docket Entry 43).

CONCLUSION

For the foregoing reasons, no need exists to strike the materials within Plaintiff's summary judgment filings about which Defendants complain and, as to each of the claims in Plaintiff's FAC, Defendants are "entitled to a judgment as a matter of law." <u>Emmett</u>, 532 F.3d at 297 (internal quotation marks omitted).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike (Docket Entry 43) is **DENIED.**

**IT IS RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment (Docket Entry 29) be **DENIED.**

**IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 27) be **GRANTED.**

<u>/s/ L. Patrick Auld</u>
<b>L. Patrick Auld</b>
<b>United States Magistrate Judge</b>

August 17, 2011